**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HARTFORD CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HEARTHWARE, INC. F/K/A IBC-HEARTHWARE, | ) | No. 1:13-cv-105 |
| INC. AND D/B/A HEARTHWARE HOME | ) | |
| PRODUCTS, INC.; and MORNINGWARE, INC. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff, Hartford Casualty Insurance Company ("Hartford"), by and through its attorneys, Tressler LLP, and for its Complaint for Declaratory Judgment against the Defendants, Hearthware, Inc. f/k/a IBC-Hearthware, Inc. and d/b/a Hearthware Home Products, Inc. ("Hearthware") and Morningware, Inc. ("Morningware"), states as follows:

**STATEMENT OF THE CASE**

1.      This is an action for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, to determine an actual controversy between the parties, concerning the rights and obligations arising under certain contracts of insurance issued by Hartford to IBC-Hearthware, Inc. (collectively referred to as "the Hartford Policies"). This action seeks a declaration that Hartford owes no coverage obligations under these policies of insurance with respect to the claims against Hearthware in a lawsuit entitled <u>Morningware, Inc. v. Hearthware Home Products, Inc.</u>, Case No. 09-cv-04348, currently pending in the Northern District of Illinois ("<u>Morningware</u> suit").

**PARTIES**

2.      Hartford is an insurance company formed under the laws of the State of Indiana and is principally located in Connecticut.

3.      Upon information and belief, Defendant Hearthware is an Illinois corporation with its principal place of business in Gurnee, Illinois.

4.      Upon information and belief, Defendant Morningware is an Illinois corporation with its principal place of business in Mt. Prospect, Illinois.  Morningware is named herein solely as an interested party to be bound by the judgment rendered by this Court.

**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds $75,000.00 exclusive of costs and interest, and the parties are citizens of different states.

6.      Venue is proper in this District pursuant to 28 U.S.C. 1391 as this case involves a claim of coverage under certain liability insurance policies issued within this District, certain claims which occurred in this District and the Defendants do business and are principally located within this District.

**FACTUAL BACKGROUND**

7.      On or about July 20, 2009, Morningware filed the Morningware suit against Hearthware in the Northern District of Illinois.  A copy of the original complaint is attached hereto as Exhibit A.

8.      Upon information and belief, Hearthware executed a waiver of service in the Morningware suit on August 4, 2009.

2

9.    Upon information and belief, Hearthware filed its appearance in the Morningware suit on August 12, 2009.

10.    Consequently, Hearthware had knowledge of the Morningware suit in August 2009.

11.    Shortly after Morningware filed its complaint, on or about August 10, 2009, Hearthware filed a complaint against Morningware relating to certain patent infringement claims in a separate lawsuit entitled IBC-Hearthware, Inc. d/b/a Hearthware Home Products, Inc., Case No. 09-cv-04903, in the Northern District of Illinois ("Hearthware suit").

12.    On or about August 26, 2009, the Hearthware suit was consolidated with the Morningware suit.  Hereinafter, Hearthware's complaint is referenced as a counterclaim against Morningware.

13.    On or about September 21, 2009, in response to Hearthware's counterclaim, Morningware filed an answer and counterclaim against Hearthware concerning the patent claims.  A copy of Morningware's initial counterclaim is attached hereto as Exhibit B.

14.    On or about November 18, 2009, Morningware filed a First Amended Counterclaim against Hearthware relating to the patent claims asserted in Hearthware's counterclaim.  A copy of Morningware's First Amended Counterclaim is attached hereto as Exhibit C.

15.    On or about November 4, 2011, Morningware also filed a First Amended Complaint against Hearthware in the Morningware suit concerning its claims relating to Hearthware's alleged illegal use of Morningware's trademark.  A copy of Morningware's First Amended Complaint in the Morningware suit is attached hereto as Exhibit D.

16.     On or about October 19, 2012, Hearthware claimed coverage as a putative insured tendering Morningware's First Amended Complaint in the <u>Morningware</u> suit to Hartford for defense and indemnity under certain Hartford policies issued to IBC-Hearthware, Inc. ("IBC").  A copy of Hearthware's tender is attached hereto as Exhibit E.  This was Hartford's first notice from Hearthware that Hearthware was being sued or that Hearthware was claiming coverage as Hartford's putative insured.

17.     Hearthware has not specifically tendered the Morningware patent counterclaim to Hartford for defense or indemnity.  (See, Exhibit E).

18.     Hartford issued a liability policy to IBC, bearing policy number 83 SBA PP3789, effective annually from January 30, 2008 to January 30, 2011, but cancelled effective February 6, 2010 (collectively referred to as the "Hartford Policies").   Copies of these policies are attached hereto respectively as Exhibits F, G and H.

19.     Subject to all of its terms, the Business Liability Coverage in the Hartford Policies issued to IBC, provides, in part as follows:

### BUSINESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage.  Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations.  The words "we," "us" and "our" refer to the stock insurance company member of The Hartford providing this insurance.

The word "insured" means any person or organization qualifying as such under SECTION **C**.– WHO IS AN INSURED.

Other words and phrases that appear in quotation marks have special meaning. Refer to SECTION **G.** – Liability And Expense Definitions.

**A.      COVERAGES**

      **1.      BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

      **Insuring Agreement**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

*      *      *

b.      This insurance applies:

(1)      To "bodily injury" and "property damage" only if:

(a)      The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(b)      The "bodily injury" or "property damage" occurs during the policy period; and

*      *      *

5

(2)     To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

\*     \*     \*

**B.     EXCLUSIONS**

1.     Applicable To Business Liability Coverage

This insurance does not apply to:

**a.     Expected Or Intended Injury**

(1)     "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

(2)     "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

\*     \*     \*

**p.     Personal and Advertising Injury**

"Personal and advertising injury":

(1)     Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2)     Arising out of oral, written or electronic publication of material

whose first publication took place before the beginning of the policy period;

\*        \*        \*

(5)        Arising out of the failure of goods, products or services to confirm with any statement of quality or performance made in your "advertisement";

\*        \*        \*

(7)        Arising out of any violation of any intellectual property rights such as copyright, patent, trademark, trade name, trade secret, service mark or other designation of origin of authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of

(a)        Copyright;

(b)        Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity or

(c)        Title of any literary or artistic work;

\*        \*        \*

(10)        Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags, or any other similar tactics to mislead another's potential customers;

\*        \*        \*

E.      **LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**

\*      \*      \*

2.      **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

\*      \*      \*

a.      **Notice of Occurrence or Offense**

You or any additional insured must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim.  To the extent possible, notice should include:

(1)      How, when and where the "occurrence" or offense took place;

(2)      The names and addresses of any injured persons and witnesses; and

(3)      The nature and location of any injury or damage arising out of the "occurrence" or offense.

b.      **Notice Of Claim**

If a claim is made or "suit" is brought against any insured, you or any additional insured must:

(1)      Immediately record the specifics of the claim or "suit" and the date received; and

(2)      Notify us as soon as practicable.

You or any additional insured must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

c.      **Assistance and Cooperation Of The Insured**

8

You and any other involved insured must:

(1)     Immediately send us copies of any demand, notices, summonses or legal papers received in connection with the claim or suit";

\*       \*       \*

(3)     Cooperate with us in the investigation, settlement of the claim or defense against the "suit"; and

\*       \*       \*

**d.       Obligations At The Insured's Own Cost**

No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

\*       \*       \*

**G.       LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

\*       \*       \*

1.      "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products, or services through:

a.      (1) Radio;
         (2) Television;
         (3) Billboard;
         (4) Magazine;
         (5) Newspaper;

b.      The Internet, but only that part of a web site that is about goods, products or services for the purpose of inducing the sale of goods, products or services; or

c.     Any other publication that is given widespread public distribution.

However, "advertisement" does not include:

a.     The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or

b.     An interactive conversation between or among persons through a computer network.

2.     "Advertising idea" means any idea for an "advertisement."

*      *      *

5.     "Bodily injury" means physical:

a.     Injury;

b.     Sickness; or

c.     Disease

sustained by a person and, if arising out of the above, mental anguish or death at any time.

*      *      *

16.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

17.    "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

b.     Malicious Prosecution;

c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises

that the person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services;

e. Oral, written or electronic publication of material that violates a person's right to privacy;

f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

g. Infringement of copyright, slogan, or title of any literary or artistic work in your "advertisement"; or

h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person.

\*      \*      \*

20. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

As used in this definition, "electronic data" is not tangible property.

\*      \*      \*

21. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or

11

"personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

\*       \*       \*

(See, Exhibits F, G, and H, Form, SS 00 08 04 05).

20.    The Umbrella Liability Coverage in the Hartford Policies issued to IBC provide, in part, as follows:

**UMBRELLA  LIABILITY  PROVISIONS**

\*       \*       \*

**SECTION I - COVERAGES**

**INSURING AGREEMENTS**

**A.     Umbrella Liability Insurance**

1.    We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in **Section IV — LIMITS OF INSURANCE.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under **Section II - INVESTIGATION, DEFENSE, SETTLEMENT**.

2.    This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:

12

a. The "bodily injury", "property damage" or "personal and advertising injury" occurs during the policy period; and

\* \* \*

**B. Exclusions**

This policy does not apply to:

\* \* \*

**4. Personal and Advertising Injury**

"Personal and advertising injury"

EXCEPTION

This exclusion does not apply if "underlying insurance" is applicable to "personal and advertising injury" and to claims arising out of that "personal and advertising injury".

\* \* \*

**14. Expected or Intended**

"Bodily Injury" or "property damage" expected or intended from the standpoint of the "insured".

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use reasonable force to protect persons or property.

**SECTION VI - CONDITIONS**

\* \* \*

**C. Duties In The Event Of Occurrence, Claim or Suit**

1. You must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim under this policy. This requirement applies only when such "occurrence" is known to any of the following:

(a) You, or any additional insured that is an individual;

(b) Any partner, if you or an additional insured are a partnership;

(c) Any manager, if you or an additional insured are a limited liability company;

(d) Any "executive officer" or insurance manager, if you or an additional insured are a corporation

(e) Any trustee, if you or an additional insured is a trust; or

(f) Any elected or appointed official, if you or an additional insured is a policy subdivision or public entity.

This duty applies separately to you and any additional insured.

\* \* \*

2. If a claim is made or "suit" is brought against any "insured", you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and!

(2) Notify us in writing as soon as practicable if the claim is likely to exceed the amount of the "self-insured retention" or "underlying insurance", whichever applies.

3. You and any other involved "insured" must:

(a) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit" involving or likely to involve a sum in excess of any "self-insured retention" or "underlying insurance", whichever applies;

(b)     Authorize us to obtain records and other information;

(c)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(d)     Assist us, upon our request in the enforcement of any right against any person or organization which may be liable to the "insured" because of injury or damage to which this policy or any "underlying insurance" or "self-insured retention" may apply.

*     *     *

5.     No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.

*     *     *

**D.     Assistance and Cooperation of the Insured**

The "insured" shall:

1.     Cooperate with us and comply with all the terms and conditions of this policy; and

2.     Cooperate with any of the underlying insurers as required by the terms of the "underlying insurance" and comply with all terms and conditions thereof.

The "insured" shall enforce any right of contribution or indemnity against any person or organization who may be liable to the "insured" because of "bodily injury", "property damage" or "personal and advertising injury" with respect to this policy or any "underlying insurance."

*     *     *

**SECTION VII - DEFINITIONS**

**Except as otherwise provided in this section or amended by endorsement, the words or phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.**

A.     **"Accident"** includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

*    *    *

D.     **"Damages"** means a monetary award, monetary settlement or monetary judgment. "Damages" include prejudgment interest awarded against the "insured" on that part of the judgment we pay.

The following are not considered "damages" and are not covered by this policy:

    1.     Fines, penalties, sanctions or taxes;

    2.     Attorney's fees and costs associated with any non-monetary relief awarded against the "insured"; or

    3.     Any monetary award, monetary settlement or monetary judgment for which insurance is prohibited by the law(s) applicable to the construction of his policy.

*    *    *

F.     **"Occurrence"** means:

    1.     With respect to "bodily injury" or "property damage", an "accident", including continuous or repeated exposure to substantially the same general harmful conditions; and

*    *    *

G.     **"Policy period"** means the period beginning with the inception date stated as such in the Declarations and ending with the earlier of:

    1.     The date of cancellation of this policy; or

16

2. The expiration date stated as such in the Declarations.

\* \* \*

I. **"Underlying insurance"** means the insurance policies listed in the Extension Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. The limit of "underlying insurance" includes:

1. Any deductible amount;

2. Any participation of any "insured"; and

3. Any "self-insured retention" above or beneath any such policy;

Less the amount, if any, by which the aggregate limit of such insurance has been reduced by any payment relating to any act, error, omission, injury, damage or offense for which insurance is provided by this policy, including Medical Payments Coverage as described in the "underlying insurance". The coverages and limits of such policies and any such deductible amount, participation or "self-insured retention" shall be deemed to be applicable regardless of:

1. Any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its policy; or

2. The actual or alleged insolvency or financial impairment of any underlying insurer or any "insured".

The risk of insolvency or financial impairment of any underlying insurer or any "insured" is borne by you and not by us.

\* \* \*

(See, Exhibits F, G, and H, Form SX 80 02 04 05).

21.     The   2008-2009   and   2009-2010   Hartford   Policies   contain   the   following endorsement:

### AMENDMENT OF CONDITIONS – ILLINOIS

This endorsement modifies insurance provided under the:

**Spectrum Umbrella Liability Supplemental Contract**

\*     \*     \*

C.     **Section VII** – The Definition of **"Damages"** is replaced by the following:

**"Damages"** do not include:

1.     Fines;

2.     Penalties; or

3.     Damages for which insurance is prohibited by the law applicable to the construction of this policy.

Subject to the foregoing, "damages" include damages for any of the following which result at any time from "bodily injury" to which this insurance applies:

1.     Death;

2.     Mental anguish;

3.     Shock

4.     Disability; or

5.     Care and loss of services or consortium.

\*     \*     \*

(Exhibit F and G, Form SX 02 04 03 00).

22.     The 2010-2011 Hartford Policy contains the following endorsement:

### ILLINOIS CHANGES

18

This endorsement modifies insurance provided under the:

**Umbrella Liability Provisions**

\*        \*        \*

F.       **Section VII –** The Definition of **"Damages"** is replaced by the following:

**"Damages"** means a monetary award, monetary settlement or monetary judgment.

The following are not considered "damages" and are not covered by this policy:

1.       Fines, penalties, sanctions or taxes;

2.       Attorney's fees and costs associated with any non-monetary relief awarded against the "insured"; or

3.       Any monetary award, monetary settlement or monetary judgment for which insurance is prohibited by the law(s) applicable to the construction of his policy.

\*        \*        \*

(Exhibit H, Form SX 02 04 01 09).

23.       Hartford denies that it owed a defense or indemnity obligation to Hearthware for the <u>Morningware</u> suit under the Hartford Policies.

24.       An actual controversy exists between the parties with respect to their respective duties and obligations under the subject policies.  This Court has the power to make binding declarations of the rights and duties of the parties herein, and to adjudicate the dispute between the parties herein.

### COUNT I

### Hearthware Breached The Notice Conditions

25.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

26.     The Hartford Policies require that Hartford must be notified of an "occurrence" or an offense which may result in a claim, or of a "suit" against Hearthware "as soon as practicable."

27.     Hartford's first notice of the Morningware suit from Hearthware was on October 19, 2012.  Prior to October 19, 2012, Hartford had no knowledge that Hearthware was claiming to an insured seeking coverage under the Hartford Policies for the Morningware suit.

28.     By failing to give notice of any alleged "occurrence," offense, claim or the Morningware suit as soon as practicable, and failing to promptly forward the suit papers, Hearthware breached the Notice Conditions of the Hartford Policies and has forfeited whatever coverage might have otherwise been available to Hearthware for the claims in the Morningware suit.

29.     Accordingly, Hartford has no duty to defend or indemnify Hearthware for the claims in the Morningware suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A.      Finding that Hartford owes no duty to defend or indemnify Hearthware for all claims in the Morningware suit; and

B.      For all such just and equitable relief, including costs for this suit.

## COUNT II

### No "Bodily Injury" or "Property Damage" Caused By An "Occurrence"

30. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

31. Subject to all of their terms, the Hartford Policies provide coverage for claims for damages because of "bodily injury" and "property damage" cause by an "occurrence" as those terms are defined by the Hartford Policies.

32. The Morningware suit does not allege claims for "damages" because of "bodily injury" or "property damage" caused by an "occurrence."

33. Therefore, Hartford has no duty to defend or indemnify Hearthware for the claims in the Morningware suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A. Finding that Hartford owes no duty to defend or indemnify Hearthware for all claims in the Morningware suit; and

B. For all such just and equitable relief, including costs for this suit.

## COUNT III

### No "Personal and Advertising Injury"

34. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

35. Subject to all of their terms and exclusions, the Hartford Policies provide coverage for claims for "damages" because of "personal and advertising injury" as that term is defined by the Policies.

36.     Most, if not all, the claims in the <u>Morningware</u> suit do not allege claims for "damages" because of "personal and advertising injury" as those terms are defined and used in the Hartford Policies.

37.     Thus, Hartford has no duty to defend or indemnify Hearthware for such claims in the <u>Morningware</u> suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A.      Finding that Hartford owes no duty to defend or indemnify Hearthware for such claims in the <u>Morningware</u> suit; and

B.      For all such just and equitable relief, including costs for this suit.

## COUNT IV

### No Coverage Outside Policy Periods

38.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

39.     To the extent that any of the claims in the <u>Morningware</u> suit concern "bodily injury," "property damage," or "personal and advertising injury" before or after the effective policy period of the Hartford Policies, there is no coverage for those claims.

40.     Thus, Hartford has no duty to defend or indemnify Hearthware for these claims in the <u>Morningware</u> suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A.      Finding that Hartford owes no duty to defend or indemnify Hearthware for these claims in the <u>Morningware</u> suit; and

B.      For all such just and equitable relief, including costs for this suit.

## COUNT V

### Intellectual Property Exclusion Precludes Coverage

41.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

42.     The Intellectual Property Exclusion in the Hartford Policies precludes coverage for "personal and advertising injury" arising out of any violation of any intellectual property rights such as trademark, trade name, service mark or other designations or origin or authenticity.

43.     The Morningware suit concerns claims arising out of illegal use of Morningware's trademark and/or claims arising out of patents.  Thus, the claims in the Morningware suit fall within the Intellectual Property Exclusion.

44.     Accordingly, Hartford has no duty to defend or indemnify Hearthware for the Morningware suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A.     Finding that Hartford owes no duty to defend or indemnify Hearthware for all claims in the Morningware suit; and

B.     For all such just and equitable relief, including costs for this suit.

## COUNT VI

### Unauthorized Use of Another's Name or Product Exclusion Precludes Coverage

45.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

46.     The Hartford Policies exclude coverage for "personal and advertising injury" "arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatags or any other similar tactics to mislead another's potential customers."

47.     The Morningware suit alleges that Hearthware illegally used Morningware's name and trademark in certain pay-per-click search engine programs and mislead or confused consumers away from Morningware's website. Consequently, coverage is excluded for the Morningware suit under this exclusion.

48.     Therefore, Hartford has no duty to defend or indemnify Hearthware for the Morningware suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A.     Finding that Hartford owes no duty to defend or indemnify Hearthware for all claims in the Morningware suit; and

B.     For all such just and equitable relief, including costs for this suit.

## COUNT VII

### Material Published Prior to Policy Period Exclusion Precludes Coverage

49.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

50.     The Hartford Policies exclude coverage for "personal and advertising injury" "arising out of oral, written, or electronic publication of material whose first publication took place before the beginning of the policy period."

24

51.     The earliest search engine results, attached as exhibits to Morningware's First Amended Complaint, illustrating Hearthware's allegedly wrongful acts is dated June 18, 2009.

52.     Consequently, the material was published prior to the inception of the 2010-2011 policy period, January 30, 2010.

53.     To the extent that the claims concern material first published before the inception date of the Hartford policies, there is no coverage for those claims.

54.     Thus, Hartford has no duty to defend or indemnify Hearthware for these claims in the <u>Morningware</u> suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A.     Finding that Hartford owes no duty to defend or indemnify Hearthware for the claims in the <u>Morningware</u> suit; and

B.     For all such just and equitable relief, including costs for this suit.

<b><u>COUNT VIII</u></b>

<b><u>Expected or Intended Injury Exclusion Precludes Coverage</u></b>

55.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

56.     The Hartford Policies preclude coverage for claims for "damages" because of "bodily injury" or "property damage" expected or intended from the standpoint of the insured and for "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting the injury.

57. Because the Morningware suit concerns Hearthware's intentional, willful, and deliberate misconduct, the claims in the Morningware suit fall within the Expected or Intended Exclusion.

58. Therefore, Hartford has no duty to defend or indemnify Hearthware for the Morningware suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A. Finding that Hartford owes no duty to defend or indemnify Hearthware for all claims in the Morningware suit; and

B. For all such just and equitable relief, including costs for this suit.

## COUNT IX

### Knowledge of Falsity Exclusion Precludes Coverage

59. Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

60. The Hartford Policies preclude coverage for "personal and advertising injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

61. The Morningware suit alleges that Hearthware knowingly made false and misleading statements concerning Morningware's product and that Hearthware knowingly made false statements to consumers that Hearthware's patent was valid. Consequently, the claims in the Morningware suit fall within the Knowledge of Falsity exclusion.

62. Therefore, Hartford has no duty to defend or indemnify Hearthware for the Morningware suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A.    Finding that Hartford owes no duty to defend or indemnify Hearthware for all claims in the <u>Morningware</u> suit; and

B.    For all such just and equitable relief, including costs for this suit.

**COUNT X**

**Quality or Performance of Goods – Failure to Conform to Statements Exclusion Precludes Coverage**

63.    Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

64.    The Hartford Policies exclude coverage for "personal and advertising injury" arising out of the failure of foods, products, or services to confirm with any statement of quality or performance made in your "advertisement."

65.    To the extent that the <u>Morningware</u> suit concern claims relating to the failure of foods, products, or services to confirm with any statement of quality or performance made in Hearthware's advertisement, coverage is precluded under the Hartford policies.

66.    Therefore, Hartford has no duty to defend or indemnify Hearthware for the <u>Morningware</u> suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A.    Finding that Hartford owes no duty to defend or indemnify Hearthware for all claims in the <u>Morningware</u> suit; and

B.    For all such just and equitable relief, including costs for this suit.

## COUNT XI

### "Damages"

67.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 24 above as if fully set forth herein.

68.     The umbrella coverage defines "damages" specifically to not include fines, penalties, or damages for which insurance is prohibited by law.

69.     The Morningware suit seeks, in part, a permanent injunction, corrections to Hearthware's advertisement, punitive damages and reasonable attorneys' fees, which are not covered "damages" under the Hartford Policies and Illinois law.

70.     Therefore, Hartford owes no coverage for this relief in the Morningware suit.

WHEREFORE, Plaintiff, Hartford prays that this Court enter the following relief:

A.      Finding that Hartford owes no coverage to Hearthware in the Morningware suit for this relief; and

B.      For all such just and equitable relief, including costs for this suit.

Respectfully submitted,

HARTFORD CASUALTY INSURANCE COMPANY

By:             s/ Ashley L. Conaghan
                One of Its Attorneys

Michael J. Duffy (mduffy@tresslerllp.com)
Ashley L. Conaghan (aconaghan@tresslerllp.com)
TRESSLER LLP
Willis Tower, 22nd Floor
233 South Wacker Dr.
Chicago, Illinois 60606
(312) 627-4000